```
 1
 2
 3
 4
 5
 6
 7
 8                        UNITED STATES DISTRICT COURT
 9                       CENTRAL DISTRICT OF CALIFORNIA
10
11   SIOBHAN HAGINS,               ) Case No. CV 13-7164-JPR
                                   )
12             Plaintiff,          )
                                   ) MEMORANDUM OPINION AND ORDER
13        vs.                      ) AFFIRMING COMMISSIONER
                                   )
14   CAROLYN W. COLVIN, Acting     )
     Commissioner of Social        )
15   Security,                     )
                                   )
16             Defendant.          )
                                   )
17
```

**I.   PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her application for supplemental security income ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).  This matter is before the Court on the parties' Joint Stipulation, filed June 23, 2014, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is affirmed and judgment is entered in her favor.

## II. BACKGROUND

Plaintiff was born on July 11, 1959.  (Administrative Record ("AR") 182.)  She has a bachelor's degree from the University of Southern California (AR 68-69, 221), and she has worked as a sales clerk and a secretary (AR 223).

On April 30, 2007, Plaintiff filed an application for SSI, which she amended on June 15.[1]  (AR 87, 182-85, 190-91.)  Plaintiff alleged she had been unable to work since December 1, 2006, because of depression, suicidal ideation, anxiety, seizures, and irritable bowel syndrome.  (AR 190, 216.)  After her application was denied, she requested a hearing before an Administrative Law Judge.  (AR 112.)  A hearing was held on May 14, 2008, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert.  (AR 55-86.)  In a written decision issued August 12, 2008, the ALJ determined that Plaintiff was not disabled.  (AR 94-98.)  On April 16, 2010, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the case for further consideration of a treating physician's opinions and Plaintiff's credibility.  (AR 99-102.)

On August 26, 2010, a second hearing was held before the same ALJ, at which Plaintiff, who was represented by counsel,

---

[1] Plaintiff apparently also filed an application for DIB on June 15, 2007.  (See AR 192-93.)  The ALJ, however, addressed only Plaintiff's application for SSI (see AR 25, 94, 98), and on appeal Plaintiff contends only that she is entitled to SSI (see, e.g., J. Stip. at 2 (noting that Plaintiff applied for SSI and not stating that she applied for DIB), 17 & n.1 (asserting that Plaintiff is entitled to closed period of SSI benefits)).

testified. (AR 27-35.) At the hearing, Plaintiff's counsel notified the ALJ that Plaintiff was working more hours than before and amended her application to allege a closed period of disability ending on June 1, 2009. (AR 29.) In a written decision issued September 17, 2010, the ALJ again found Plaintiff not disabled during the relevant time period. (AR 20-25.) In doing so, the ALJ explicitly "incorporate[d] by reference [his] prior decision." (AR 23.) On April 3, 2012, the Appeals Council denied Plaintiff's request for review. (AR 10-14.) This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support

either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. <u>Id.</u> at 720-21.

**IV.  THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   <u>The Five-Step Evaluation Process</u>

An ALJ follows a five-step sequential evaluation process to assess whether someone is disabled.  20 C.F.R. § 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied.  § 416.920(a)(4)(i).  If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied.  § 416.920(a)(4)(ii).  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the

Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  § 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal one in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[2] to perform her past work; if so, she is not disabled and the claim must be denied.  § 416.920(a)(4)(iv).  The claimant has the burden of proving she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  Id.  If that happens or if the claimant has no past relevant work, the Commissioner bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy.  § 416.920(a)(4)(v).  That determination comprises the fifth and final step in the sequential analysis.  § 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.   The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from April 30, 2007, her application date, to June 1, 2009, when she returned to work full time.[3]  (AR

---

[2] RFC is what a claimant can do despite existing exertional and nonexertional limitations.  § 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3] The ALJ assessed whether Plaintiff had been under a disability on or after her application date rather than her alleged onset date.  (AR 22.)  Plaintiff has not challenged the ALJ's use of the application date.  (See J. Stip. at 17 & n.1.)

22.) At step two, he found that Plaintiff had the severe impairments of "bipolar Type I disorder" and "methamphetamine dependence, current sobriety." (Id.)

At step three, he determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing. (Id.) At step four, the ALJ found that Plaintiff had the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: [s]he has no restriction of activities of daily living[;] moderate difficulties in maintaining social functioning[; and] moderate difficulties in maintaining concentration, persistence or pace with no episodes of decompensation." (AR 23-24.) The ALJ noted that "[a]ccordingly, she can perform basic unskilled work." (AR 24.) He then concluded that under the Medical-Vocational Rules, see 20 C.F.R. pt. 404, subpt. P, app. 2, Plaintiff was not disabled. (AR 25.)

**V.   DISCUSSION**

Plaintiff contends that the ALJ erred by failing to provide any reasons for discounting her credibility in his September 2010 decision. (J. Stip. at 4, 7.) For the reasons discussed below, reversal is not warranted on this basis.

A.   Applicable Law

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight."  See Weetman v.

---

Indeed, the ALJ's use of the application date could not have prejudiced Plaintiff because the earliest month she could have received SSI benefits was the month following the month in which she filed her application.  See § 416.335.

Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted). In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. See Lingenfelter, 504 F.3d at 1035-36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036 (internal quotation marks omitted). If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in original). When the ALJ finds a claimant's subjective complaints not credible, the ALJ must make specific findings that support the conclusion. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).

Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester, 81 F.3d at 834.[4] If the ALJ's

---

[4] In Ghanim v. Colvin, the Ninth Circuit noted that its precedent was inconsistent on whether the "clear and convincing" standard does not apply only when an ALJ makes an "actual finding of malingering" or also when the record merely contains "evidence of malingering." 763 F.3d 1154, 1163 n.9 (9th Cir. 2014). The

credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

B.  Analysis

Plaintiff acknowledges that the ALJ's August 2008 decision listed several bases for discrediting her (J. Stip. at 4-5), but she argues that because the Appeals Council "vacated" that decision, "[a]ny argument that the prior analysis should be incorporated by reference" into the September 2010 decision is "flawed" (id. at 5, 7).  Plaintiff further contends that the ALJ's September 2010 decision provided "no further analysis" regarding her credibility and instead cited only "boilerplate" and "canned verbiage" without giving any specific reasons for discrediting her.  (Id. at 5, 15.)  Plaintiff argues that the ALJ's decision therefore must be reversed because he "failed to provide any [reasons], let alone clear and convincing reasons," for discounting her credibility.  (Id. at 7.)

Plaintiff's argument fails.  In the September 2010 decision, the ALJ specifically stated that he was "incorporat[ing] by reference" his "prior decision," which necessarily included his previous assessment of Plaintiff's credibility.  (AR 23.)  And although Plaintiff generally asserts that such incorporation is somehow "flawed" (J. Stip. at 7), she cites no authority for that proposition, and in fact courts have found that an ALJ may properly incorporate an earlier decision into a later one, see, e.g., Chavez v. Astrue, 699 F. Supp. 2d 1125, 1137 n.9 (C.D. Cal.

---

Ninth Circuit declined to decide the issue, however.  Id.

2009) (finding that "ALJ incorporated by reference his prior decision of December 21, 2004, . . . and such incorporation is permissible"). As discussed below, moreover, in the August 2008 decision the ALJ provided legally sufficient reasons for discounting Plaintiff's subjective complaints to the extent they were inconsistent with her RFC.[5] Indeed, Plaintiff has not challenged any of those specific credibility findings.

In a disability report, Plaintiff alleged that she was totally disabled because of her depression, suicidal ideation, anxiety, seizures, and irritable bowel syndrome. (AR 216.) The ALJ found that her seizures and irritable bowel syndrome were nonsevere (AR 22), findings that Plaintiff does not challenge. Regarding her mental impairments, Plaintiff stated that she was unable to work because she could not "concentrate or focus." (Id.) In a function report, Plaintiff asserted that she could pay attention for only five to 10 minutes but could "follow written instructions well." (AR 248.) At the May 2008 hearing, she testified that she was working 10 to 12 hours a week but could not work more because she had "a problem with patience and

---

[5] Plaintiff states that the ALJ failed to follow the Appeal Council's directive to reevaluate her credibility, but she also acknowledges that the Court determines only whether the ALJ's decision is supported by substantial evidence and free of legal error, not whether he complied with the council's remand order. (J. Stip. at 6); see Stoddard v. Astrue, No. EDCV 08-00994 AJW, 2009 WL 2030349, at *6 (C.D. Cal. July 8, 2009) (finding that "[t]he issues before the court are whether the ALJ's final decision is supported by substantial evidence and is free of legal error, not whether the ALJ complied with the Appeals Council's remand order" (citation omitted)). In any event, the Appeals Council denied Plaintiff's request for further review (AR 10-15), suggesting that it was satisfied that the ALJ complied with its earlier remand order.

9

irritability," "some days [her] thought[s] raced a lot," and she had "difficulty concentrating and sitting still and staying on task." (AR 72.)  Plaintiff testified that she had panic attacks "almost daily" (AR 74) and that she had suffered from "psychotic breaks" resulting in hospitalization (AR 75).[6]  She did not testify to any physical limitations.

As the ALJ found, Plaintiff's daily activities were

---

[6] Specifically, Plaintiff testified that she was admitted to Harbor-UCLA Medical Center twice in the fall of 2007 "under a 72 hour psych hold" and that drug tests during those hospitalizations were "clean." (AR 75.)  The record does not contain medical notes from a hospitalization at Harbor-UCLA Medical Center in fall 2007. (See AR 320-79.)  In July 2007, however, Plaintiff's physician noted that Plaintiff had been hospitalized for one night during a "manic episode," which may have been precipitated by her psychiatric medication. (AR 448.)  She noted that Plaintiff denied drug use at that time, and a urine toxicology screen was negative. (Id.; see also AR 478 (physician's Dec. 2007 letter stating that in July 2007, Plaintiff "presented to Harbor PER floridly manic [with] psychotic symptoms" and had negative urine toxicology screen).)  Her symptoms had showed "dramatic improvement" with psychiatric medications. (AR 448.)  Records from Harbor-UCLA Medical Center do show that Plaintiff was hospitalized there in June 2003 (AR 322-27), at which time a toxicology screen was positive for opiates (AR 354); August 2005, at which time she admitted to using marijuana three or four times a day and recent use of Vicodin and alcohol (AR 347-51); November 2005, at which time she admitted to alcohol and marijuana use (AR 344) and tested positive for cocaine and marijuana (AR 345); June 2006, at which time she "admit[ted] to drug use" (AR 335) and tested positive for amphetamines and marijuana (AR 336, 372); and August 2006, at which time she was noted to be using amphetamines, alcohol, and possibly marijuana (AR 329) and tested positive for amphetamines and cannabinoids (AR 371).  In December 2005, moreover, Plaintiff voluntarily checked into Harbor-UCLA and asked for help with "detox" and "getting into rehab." (AR 339-41.)  The record also showed that Plaintiff was admitted to Del Amo Hospital in December 2006 for treatment of psychosis, "likely drug induced"; she denied using methamphetamine but "a urine tox screen . . . return[ed] positive for both THC and methamphetamine metabolites." (AR 304.)

10

inconsistent with her allegedly totally disabling mental impairments. (AR 96.) Plaintiff stated in a function report that she lived with her family, attended to her own personal needs, watched television, read the newspaper, cooked meals, ran errands, cleaned her house, did laundry, shopped in stores for groceries twice a month, and took walks with her daughter (AR 96, 243, 245-47); she also testified at the May 2008 hearing that she was working part time as a cashier at a drug store (AR 69).[7] Although Plaintiff alleged that she had difficulty performing some of those activities because of her mental impairments (see, e.g., AR 244 (stating that she did not bathe frequently), 245 (stating that she had trouble finishing chores and would sometimes "forget to watch the stove"), 247 (stating that she "only scan[s]" the newspaper because of poor concentration)), the ALJ largely accommodated those complaints by including in her RFC moderate limitations in concentration and social functioning and limiting her to basic unskilled work (AR 23-24, 97). In any event, even considering those alleged difficulties, her daily activities are still inconsistent with, for example, her alleged inability to concentrate for more than even five or 10 minutes.

---

[7] At the May 2008 hearing, Plaintiff testified that she wasn't working more hours because she was "having difficulty maintaining the 10 to 12 hours a week" she was already working (although she also admitted that her employer had not offered her any additional hours). (AR 70.) Around that same time, however, Plaintiff reported to her medical providers that she was working 20 or 25 hours a week. (AR 424 (Feb. 2008, working 20 hours a week), 425 (Jan. 2008, working 25 hours a week).) In any event, by June 1, 2009, Plaintiff was working enough hours that she later amended her application to seek SSI only up to that date. (AR 29.)

See Molina, 674 F.3d at 1113 ("Even where [claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

The ALJ also permissibly discounted Plaintiff's subjective complaints because the objective medical evidence did not support them. (AR 96); see Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); Lingenfelter, 504 F.3d at 1040 (in determining credibility, ALJ may consider "whether the alleged symptoms are consistent with the medical evidence"); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). Although Plaintiff claimed to have been debilitated by depression and anxiety (AR 216), the ALJ noted that Plaintiff's psychiatric hospitalizations in fact appeared to have been primarily for treatment of "drug-induced psychosis" (AR 95). For example, in December 2006, Plaintiff was hospitalized for "[p]sychosis not otherwise specified, likely drug induced"; a doctor noted that although Plaintiff denied having used methamphetamine for the preceding three months, a "urine tox screen did return positive for both THC and methamphetamine metabolites." (AR 304; see also AR 306, 372.) Moreover, a June 2006 hospital record noted that Plaintiff "admit[ted] to drug use" (AR 335) and tested positive for amphetamines and marijuana (AR 336, 372), and an August 2006 record of a psychiatric

hospitalization noted amphetamine, alcohol, and marijuana use (AR 329; see also AR 331 ("likely under influence of stimulant given h[istory]"), 371 (Aug. 2006 positive test for amphetamines and cannabinoids)).

As the ALJ also noted (AR 96), Plaintiff asserted that she was disabled in part because of "seizures" and irritable bowel syndrome (AR 216; see also AR 277 (stating that her stomach aches "can last all day" and she was "usually sick 5 days a week"), 279 (stating that her "worst problem" was irritable bowel syndrome)), but the record contains no evidence of seizures and only rare complaints of irritable bowel syndrome (see, e.g., AR 356 (July 2006, noting that Plaintiff complained of "persistent IBS symptoms"), 370 (Oct. 1998, noting past medical history of "IBS").) Plaintiff's alleged physical symptoms are also inconsistent with working 12 hours a week and some of her other activities. See Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (as amended) (finding that claimant's ability to "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity").

In discounting Plaintiff's credibility, the ALJ also noted that Plaintiff is a college graduate and appeared "very bright and articulate." (AR 96.) The ALJ was entitled to rely on his personal observations of Plaintiff as one factor in his overall credibility analysis. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (ALJ's personal observations may be used in overall evaluation of credibility but cannot form "sole basis" for

credibility determination); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996) ("[T]he adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements.").

The ALJ also noted that Plaintiff's testimony that she was following a 12-step recovery program was inconsistent with her testimony that she still used marijuana and alcohol occasionally. (AR 95-96, see also AR 73-74 (admitting to using marijuana "maybe once a month" and "minimal" use of alcohol).) Although the ALJ is entitled to rely on inconsistencies in Plaintiff's testimony in discounting her credibility, see Smolen, 80 F.3d at 1284, here the ALJ's reasoning was not clear and convincing. Plaintiff's honesty in confessing that she was not always compliant with the program does not reflect adversely on her credibility. See Russell v. Astrue, No. 11-CV-1656-W JMA, 2013 WL 941792, at *15 (S.D. Cal. Feb. 15, 2013) (finding that ALJ improperly discounted credibility based on plaintiff's alcoholism when "the record reflects that Plaintiff has consistently been open and honest about his alcohol consumption"), accepted by 2013 WL 941790 (S.D. Cal. Mar. 11, 2013); Kimbrough v. Astrue, No. 1:11-CV-01410-SKO, 2013 WL 268700, at *9 (E.D. Cal. Jan. 23, 2013) (finding that ALJ improperly discounted credibility based on history of illegal drug use when plaintiff did not make inconsistent statements about past drug use). Because the ALJ provided other legally sufficient reasons for discounting Plaintiff's credibility, however, any error was harmless. See Carmickle, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (ALJ's reliance on erroneous reasons for

adverse credibility determination harmless when substantial evidence supported determination and errors did not negate its validity).

 This Court may not second-guess the ALJ's credibility finding simply because the evidence may have been susceptible of other interpretations more favorable to Plaintiff. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ reasonably and properly discredited Plaintiff's testimony regarding the severity of her symptoms and gave clear and convincing reasons for his adverse credibility finding. Reversal is therefore not warranted.

**VI. CONCLUSION**

 Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[8] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: October 30, 2014     _/s/ Jean Rosenbluth_
                JEAN ROSENBLUTH
                U.S. Magistrate Judge

---

[8] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."